**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>DONTE DAY,<br>Defendant. | **Criminal No. 03-564 (CKK)** |

**MEMORANDUM OPINION**
(September 1, 2026)

Pending before the Court are Defendant Donte Day's [36] *pro se* Motion to Revive his Motion to Vacate his Conviction under 28 U.S.C. Section 2255, [38] *pro se* Motion for Appointment of Counsel, and [39] *pro se* Motion for a Sentence Reduction pursuant to Sentencing Guideline Amendments 819 and/or 821.[1] Defendant Donte Day (hereinafter "Defendant") requests reinstatement of his Section 2255 motion, which challenges the constitutionality of 18 U.S.C. § 922(g); he seeks a sentence reduction pursuant to Amendment 819 and/or 821 of the Sentencing Guidelines, and he requests appointment of counsel to assist with pursuing his claims. The Government asserts that the Court should summarily deny each of Defendant's motions because his Section 2255 claims are untimely, procedurally defaulted, and without merit, and he is

[1] In connection with this Memorandum Opinion, the Court considered: (1) Defendant Donte Day's [36] *pro se* [Motion to Revive his] Title 28 U.S.C. § 2255 Motion to Set Aside or Vacate his Sentence and Request for Counsel ("Def.'s § 2255 Motion"); (2) Defendant's [38] *pro se* Motion for Appointment of Counsel ("Def.'s Mot. for Appt. of Counsel"); (3) Defendant's [39] *pro se* Omnibus Motion to Reduce his Sentence per the U.S. Sentencing Commission's November 1, 2023 Amendments and Amendment 821 and Motion to Reinstate Petitioner's Motion under 28 U.S.C. § 2255 ("Def.'s Omnibus Mot."); (4) the Government's [44] Opposition to Defendant's *Pro se* Motions ("Govt. Opp'n"); (5) Defendant's [46] *pro se* Reply ("Def.'s Reply"); and (6) the entire record in this case.

ineligible for a sentence reduction pursuant to Amendment 819 or 821. Govt. Opp'n, ECF No. 44, at 3. The Government asserts further that, "appointing counsel would not be in the interests of justice." *Id.* at 1. For the reasons explained in detail herein, this Court finds that Defendant is entitled to no relief and accordingly, his three motions shall be DENIED.

The Court declines to hold a hearing on Defendant's Motion to Reinstate his Section 2255 Petition. "A judge need not conduct an evidentiary hearing before denying a petition for relief under §2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255). The decision to conduct a hearing is "committed to the court's discretion." *United States v. Pollard*, 959 F.2d 1011, 1031 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). In making such a decision, "the judge's recollection of the events at issue may enable [the judge] summarily to dismiss a § 2255 motion." *Pollard*, 959 F.2d at 1031 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, n.4 (1977)). A hearing is required "only where the § 2255 motion raises detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal recollection[.]" *Pollard*, 959 F.2d at 1031 (cleaned up). Having handled this case since prior to sentencing, the undersigned is familiar with the issues presented in Defendant's motions, and accordingly, no hearing is necessary in connection with this Court's determination that Defendant is entitled to no relief regarding reinstatement of his Section 2255 petition. Nor would oral argument be of assistance to this Court in rendering a decision on Defendant's request for a sentence reduction pursuant to Amendments 819 and 821. *See* LCrR 47(f).

The Court begins its analysis of Defendant's Motions by reviewing background

information that is relevant to Defendant's Motions.

I. BACKGROUND

A. Relevant Procedural History

On April 6, 2002, Defendant entered a plea of guilty to one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). Plea Agreement, ECF No 21. On June 29, 2004, Defendant was sentenced to 54 months of incarceration. Judgment, ECF No. 25. When sentencing Defendant, this Court noted that his total offense level was 20 (after acceptance of responsibility) and his Criminal History category was IV, which corresponded to a Sentencing Guidelines range of 51-63 months. Sentencing Transcript, ECF No. 28, at 2-4. On June 9, 2005, Defendant was sentenced to a consecutive 280-month term of imprisonment in the Superior Court for the District of Columbia for second-degree murder while armed. Gov. Ex. 1, Sentence Computation Data, at 2. Defendant is currently serving his 334-month aggregate term of imprisonment. *Id.* at 3.

On June 24, 2020, Defendant – through his then-counsel, the Office of the Federal Public Defender – filed his [27] motion to vacate his conviction pursuant to 28 U.S.C. § 2255, based on the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. 225 (2019). Afterwards, the parties moved several times to extend the briefing schedule on that motion, while waiting for the Supreme Court to resolve then-pending cases regarding *Rehaif* errors so that counsel could determine how to proceed in the instant case. On October 15, 2021, Defendant, through counsel, filed a [35] notice voluntarily dismissing his Section 2255 motion.

B. Defendant's Pending Motions

Several years later, Defendant proffered his [36] *pro se* letter – which was accepted for

filing as a motion – requesting that the Court revive his *Rehaif* claim and asking for appointment of counsel to assist with the claim. Additionally, Defendant proffered his [38] *pro se* letter –also accepted for filing as a motion – asserting that Amendment 819 amended the Guideline relating to unlawful possession of firearms and requesting appointment of counsel to assist him in seeking a sentence reduction. Finally, Defendant proffered his [39] *pro se* Omnibus Motion, encompassing both claims, which the Court granted Defendant leave to file. In that Omnibus Motion, Defendant cites also to *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), alleging that the felon-in-possession statute at 18 U.S.C. 922(g)(1) is unconstitutional as applied to him. Def.'s Omnibus Mot., ECF No. 39, at 6-9. Furthermore, Defendant asks the Court to reduce his sentence under the criminal history "status points" provisions of Amendment 821 to the Sentencing Guidelines. *Id.* at 4-5. The Government opposes all relief sought by Defendant. The Court turns now to the applicable legal standards.

## II. LEGAL STANDARDS

### A. Standard for Habeas Claims

Under 28 U.S.C. §2255, a federal prisoner may file a motion to vacate, set aside or correct his sentence upon belief that the otherwise final sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). A motion under Section 2255 is "an extraordinary remedy and not a substitute for a direct appeal." *Womack v. United States*, 395 F.2d 630, 631 (D.C. Cir. 1968). "[T]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982);

*see also Pollard*, 959 F.2d at 1020 (requiring the defendant to show "a good deal more than would be sufficient on direct appeal" to gain collateral relief). Furthermore, the petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *United States v. Cooper*, 610 F. Supp. 3d 184, 189 (D.D.C. 2022) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)). "Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *United States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011).

1. Habeas Claims in Plea Cases

"[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

While a constitutional error in the plea colloquy entitles a defendant to relief "unless the error was harmless," *United States v. Dewalt*, 92 F.3d 1209, 1213 (D.C. Cir. 1996), "in order to prevail under § 2255, a defendant must show that the plea proceeding was tainted either by 'a fundamental defect which inherently results in a complete miscarriage of justice' or by 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). In a § 2255 motion that seeks to vacate a conviction that resulted from a guilty plea, a defendant fails to satisfy his "burden of demonstrating a manifest injustice" if he does not demonstrate that "he is innocent or that he would not have pleaded guilty

if he had been apprised of the [purported missing] element in the charge against him." *Id.* at 1214 (contrasting this with the harmless-error standard on a direct appeal). The Court turns now to the requirements for Section 2255 claims.

a. Requirements for Section 2255 Claims

i. One Year Limitation

A first requirement is that Section 2255 motions must be filed within one year of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action:

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

23 U.S.C. § 2255(f).

ii. Claims Generally Must be Raised on Direct Appeal

A second requirement is that a defendant raise all available claims on direct appeal. With the exception of claims for ineffective assistance of counsel, a defendant who fails to raise a claim on direct appeal – when he was or should have been aware of the claim – procedurally defaults on the claim and is prohibited from raising it in a collateral attack. *Massaro v. United States*, 538 U.S. 500, 504; *Bousley v. United States*, 523 U.S. 614, 622 (1998) (same).

To overcome time and procedural limitations, a defendant must demonstrate "cause" for his failure to raise the claim earlier and "prejudice" because of his failure. *Bousley*, 523 U.S. at 622. To demonstrate "cause," a defendant must prove that some "objective factor external to the

defense" impeded efforts by counsel to raise the claim. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). To demonstrate "actual prejudice," a petitioner must show that errors at trial "worked to his *actual* and substantial disadvantage" resulting in an "error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in the original). At the very least, a petitioner must demonstrate that "there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different." *United States v. Moore*, 75 F. Supp. 3d 568, 572 (D.D.C. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)).

A limited exception to the time and procedural limitations exists also for a "narrow class of . . . extraordinary instances [in which] a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494. When applying that exception, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The evidence that a defendant is actually innocent must be "so strong that a court cannot have confidence in the outcome" of the case. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "Because such evidence is obviously unavailable in the vast majority of case, claims of actual innocence are rarely successful." *Id.* at 324.

iii. No Second or Successive Section 2255 Motions

A third requirement is that a defendant raise all available claims in a single Section 2255 motion, as district courts lack jurisdiction to consider a second or successive Section 2255 motion. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); 28 U.S.C. § 2255(h)

(specifying the circumstances in which a court of appeals can authorize a district court to consider a second or successive § 2255 motion).

III. ANALYSIS OF DEFENDANT'S CLAIMS

A. Revival of Section 2255 Motion based on *Rehaif* ("Defendant's *Rehaif* Claim")

The Court begins by addressing whether there is any merit to Defendant's claim based on *Rehaif*, in the context of the ruling in that case, before turning to the time and procedural deficiencies of Defendant's *Rehaif* claim.[2]

1. Defendant's *Rehaif* Claim is Without Merit

In *Rehaif*, the Supreme Court held that to convict a defendant under 18 U.S.C. § 922(g) – which prohibits certain classes of persons, including convicted felons, from possessing a firearm – the government "must show that the defendant knew that he possessed a firearm and also that he knew he had the relevant status when he possessed it."[3] *Rehaif*, 588 U.S. at 227. In his § 2255 Motion, Defendant argues that the Government did not demonstrate that Defendant had knowledge of his prohibited status as a convicted felon. *See generally* Def.'s § 2255 Mot., ECF No. 36, at 2-3 (in part, alleging that the conduct charged by the grand jury was somehow incomplete); *but see* Indictment, ECF No. 1 (noting that Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year and that he unlawfully and knowingly received and possessed a firearm).

---

[2] While Defendant's *Rehaif* claim could be denied summarily based on just one of the grounds asserted by the Government, because the Defendant is acting *pro se*, the Court will address several of the grounds asserted and briefed by the Government, some of which were replied to by Defendant.

[3] The Court notes that Defendant acknowledges that when the police came into his house, he told the police that he had a gun in a bag under a bed. Def.'s Omnibus Mot., ECF No. 39, at 6 n.8.

A defendant's knowledge of his status may be inferred from all relevant "facts and circumstances surrounding the case." *See, e.g., Liparota v. United States*, 471 U.S. 419, 434; *see also Rehaif*, 588 U.S. at 233-234 (noting that "knowledge can be inferred from circumstantial evidence") (quotation omitted). In this case, the record makes clear both that Defendant knew he had previously been convicted of a felony and that the Government could have readily proved such knowledge. *See* Presentence Investigation Report (detailing Defendant's previous convictions); *see also* Factual Proffer, ECF No. 20 (indicating that Defendant provided a videotaped statement that "the firearm was in his possession" and that "he knew he was not allowed to possess a firearm because of his prior felony conviction"). Nor do Defendant's vague and unsupported allegations – that he was somehow unaware of his status or that the Government could not prove it – support his allegation that his plea proceeding was "tainted by a fundamental defect which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001) (internal quotation marks and citations omitted). "A defendant considering whether to plead guilty would recognize [his status as a felon-in-possession] and would likely factor that reality into the decision to plead guilty." *Greer v. United States*, 593 U.S. 503, 509 (2021).

In *Greer*, the Supreme Court addressed a *Rehaif* error raised on direct appeal, rather than on collateral review, and concluded that "[i]n felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representations on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." 583 U.S. at 514. When the defendant does make that argument, "the court must determine whether the defendant has carried the burden of showing a 'reasonable probability' that the

outcome of the district court proceeding would have been different." *Id.* The Supreme Court observed also that such a showing will be an "uphill climb" for defendants for the simple reason that "[i]f a person is a felon, he ordinarily knows he is a felon" as "[f]elony status is simply not the kind of thing that one forgets." *Id.* at 508 (citation omitted).

Considering the record in this case and the applicable caselaw, the Court concludes that Defendant's *Rehaif* claim that the Government did not prove that he knew he was a "felon in possession" is without merit. Nor is there a reasonable probability that if Defendant had known of this knowledge-in-status requirement, the outcome of the district court proceeding would have differed. *See generally United States v. Bates*, 960 F. 3d 1278, 1296 (11th Cir. 2020) ("Had [defendant] known that the government needed to prove that he knew he was a felon, the probability is virtually zero that it would have changed his decision to plead guilty."). Accordingly, there is no reason to permit the revival of Defendant's Section 2255 motion based on reinstatement of his *Rehaif* claim. Furthermore, the *Rehaif* claim was not timely filed and it is procedurally barred, as discussed below.

2. Defendant's *Rehaif* Claim is Time Barred

In this case, the latest for Defendant to file his *Rehaif* claim would be one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[4] 28 U.S.C. § 2255(f)(3). In the instant case, that would be June 21, 2020, as

[4] The Government notes that "although neither the Supreme Court nor the D.C. Circuit has directly addressed the question, *Rehaif* generally applies retroactively on collateral review." Govt. Opp'n, ECF No. 44, at 10, n.5 (citing *United States v. Redrick*, No. 13-cr-155 (RJL), 2024 WL 1091789, at *3 (Mar. 13, 2024)).

the Supreme Court decided *Rehaif* on June 21, 2019. While Defendant previously filed a *Rehaif*-based motion in June of 2020, he dismissed it on October 15, 2021, and he did not file his current *Rehaif* claim until over three years after the limitations period had expired.

In his Omnibus Motion, Defendant asserts that his current *Rehaif* claim should relate back to his prior Section 2255 motion. Def.'s Omnibus Mot., ECF No. 39, at 2. But, as noted, Defendant voluntarily dismissed his previous motion in 2021, and the relation-back doctrine does not allow dismissed claims to be "reinstated" after expiration of the limitation period. The Government explains that an amendment of a pleading relates back to the date of the original filing under specified circumstances. Govt. Opp'n, ECF No. 44, at 11 (citing Fed. R. Civ. P. 15(c) and *Ahmed v. Dragovich*, 297 F.3d 201, 207-208 (3d Cir. 2002)). "However, once a suit is dismissed, . . . 'the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.'" Govt. Opp'n, ECF No. 44, at 11 (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)). Even "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." *Id.* Accordingly, there is no applicable "relation back" in this case, and Defendant's *Rehaif* claim may be denied also on the ground that it is untimely.

3. Defendant's *Rehaif* Claim is Procedurally Defaulted and He Does Not Show Cause and Prejudice or Claim Actual Innocence

Defendant did not raise on appeal the claim that his guilty plea was defective due to lack of notification of the knowledge-of-status requirement for 18 U.S.C. § 922(g).[5] The Government

[5] Defendant did not file an appeal.

contends that, following the Supreme Court's *Rehaif* decision, "district courts across the country have repeatedly found that *Rehaif* claims are subject to procedural default where the defendant did not assert the claim on direct appeal and denied such claims as procedurally defaulted where the defendant could not demonstrate either cause and prejudice or actual innocence." Govt. Opp'n, ECF No. 44, at 13 (string citing cases, including *Redrick*, 2024 WL 1091789, at *3).

In this case, Defendant does not acknowledge that he procedurally defaulted on his claim nor does he try to establish cause and prejudice to excuse such default or claim actual innocence.[6] Furthermore, the Government contends that Defendant "cannot establish 'cause' on grounds that his *Rehaif* challenge was either foreclosed by existing precedent or so novel that he had no reasonable basis to raise it on appeal." Govt. Opp'n, ECF No. 44, at 15. This is because "[n]umerous district courts . . . have concluded that a § 2255 claim asserting a *Rehaif* challenge to a guilty plea does not satisfy the 'novelty' exception." *Id.* (string citing cases).

Similarly, Defendant cannot show the requisite prejudice, *i.e.*, that the error alleged "worked to his *actual* and substantial disadvantage" resulting in "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Watkins v. United States*, 18CR379, 2023 WL 2753240, at *6 (M.D.N.C. Jan. 20, 2023) ("*Greer* articulated the threshold to show prejudice for [a] *Rehaif* error in a direct appeal under the plain-error standard. . . [T]he *actual prejudice* standard for collateral attacks is a significantly higher hurdle than would exist on direct appeal.") (emphasis in original) (quotation marks and citation omitted). In this case, Defendant would have to show that "but for the *Rehaif* error, he would not

[6] While the Government discusses the standard for actual innocence, the Court does not address that issue in this Opinion as Defendant makes no claim of actual innocence in connection with any of his claims.

have pled guilty to [the felon-in-possession charge] but would have elected instead to go to trial on that count." *United States v. Asmer*, Cr. No. 3:16-423-CMC, 2020 WL 6827829, at *10 (D.S.C. Nov. 20, 2020); *see also United States v. Caudle*, 968 F.3d 916, 921-22 (8th Cir. 2020) (finding no reasonable probability that, but for a *Rehaif* error, the defendant would not have pleaded guilty). As the Supreme Court noted in *Greer* however, "absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon" as "that simple truth [of felony status] is not lost upon juries[.]" *Greer*, 593 U.S. at 508-509 (emphasis in original). For this reason, "[d]emonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons [a]nd they know the Government would have little trouble proving that they knew." *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020).

In the instant case, Defendant has not shown that he would not have entered a guilty plea if he had been instructed about *Rehaif's* knowledge-of-status element during his plea colloquy. And, the record in this case demonstrates that Defendant knew he had been previously convicted of a felony and that the Government could have proved such knowledge. Here, "Defendant was sentenced to between *5 and 15 years'* imprisonment for the prior conviction underlying the felon-on-possession conviction he now seeks to vacate, and he had served over *eight years* in prison for that crime prior to committing the instant offense." Govt. Opp'n, ECF No. 44, at 18 (emphasis in original); Gov. Ex. 2 Docket Report (1992 FEL 009975) at 1; Gov. Ex. 1, Sentence Computation Data at 6-7. Accordingly, a claim by Defendant that he did not know that he had a prior felony conviction would be unbelievable. Furthermore, less than two years after Defendant's release on that predicate conviction, and while on parole, he committed the instant offense. Govt. Ex. 1:

Sentence Computation Data at 7; *see also* Sent. Tr., ECF No. 28 at 3. The Court concludes therefore that Defendant cannot credibly argue that he had no knowledge that he was a convicted felon after serving eight years. "[S]erving more than a year in prison provide[s] circumstantial evidence of knowledge of felon status." *United States v. Innocent*, 977 F.3d 1077, 1085 (11th Cir. 20202); *see also United States v. Brown*, 845 Fed. Appx. 1, 3 (D.C. Cir. 2021) ("*Rehaif* requires nothing more than that the Government prove [the defendant] knew he had been convicted of a crime punishable by imprisonment of more than one year.") Because Defendant cannot demonstrate cause or prejudice that would excuse his procedural default, his *Rehaif* claim fails also on this [third] ground, with the effect that the Defendant's request to renew his *Rehaif* claim shall be denied. Accordingly, the Court finds no grounds supporting Defendant's request to reinstate his Section 2255 motion asserting a *Rehaif* claim.

B. Revival of Section 2255 Motion based on *Bruen* ("Defendant's *Bruen* Claims")

Defendant seeks also to revive his Section 2255 motion to vacate his conviction on grounds that the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) renders the felon-in-possession statute set out at 18 U.S.C. 922(g)(1) unconstitutional on its face and as-applied to him. Def.'s Omnibus Mot., ECF No. 39, at 5-9; *see also* Def.'s Reply, ECF No. 46, at 1 (where Defendant proffers that the *Bruen* framework emphasizing "strict scrutiny required for firearm regulations" was extended by the Supreme Court's decision in *Rahimi*). The Government challenges Defendant's *Bruen* claim on grounds that it is untimely, procedurally defaulted, and without merit. Below, the Court provides some relevant caselaw background before addressing the Government's three challenges to Defendant's *Bruen* claims, each of which warrants denial of Defendant's request to revive his Section 2255

Motion based on those claims.

1. The Supreme Court's Decisions in *Bruen* and *Rahimi*

In *Bruen*, the Supreme Court considered a challenge made by two "law-abiding, adult citizens" to New York's requirement that to obtain a license for concealed carry of a firearm outside one's home or business, for self-defense, one had to prove "proper cause exists" before issuance of such license. 597 U.S. at 12, 15-17. "Proper cause" was not statutorily defined, but it was applied as a "demanding" standard, *id.* at 12, and the Supreme Court found that the "proper cause" requirement violated the Second Amendment. The Supreme Court explained that "the test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." 597 U.S. at 26 (discussing the first step of a two-step test set out in *District of Columbia v. Heller*, 554 U.S. 570 (2008)).[7] In applying the text-and-history test, in *Bruen*, the Supreme Court concluded first that the Second Amendment's text protected conduct governed by New York's "proper cause" requirement and reiterated *Heller's* holding that the text of the Second Amendment protected "the right of law-abiding, responsible citizens to use arms for self-defense." *Bruen*, 597 U.S. at 26 (cleaned up). Furthermore, the Supreme Court held that this right applies even outside the home

---

[7] *Bruen* did however reject the interest-balancing second step in *Heller*. More specifically, *Bruen* held that:

> [T]his two-step approach[ ] is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history. But *Heller* and *McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010),] do not support applying means-end scrutiny [*i.e.*, step two] in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Bruen*, 597 U.S. at 19.

or place of business, so that the "proper cause" licensing requirement infringed upon it. *Id.* at 31-34.

Because the Second Amendment's "text" protected conduct governed by the "proper cause" requirement, the Supreme Court considered next whether New York could show that this requirement was "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 33-34. The Supreme Court agreed that there was a historical basis for well-defined restrictions but concluded that there was not "a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense," or of "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38. Accordingly, the Supreme Court held that "[u]nder *Heller's* text-and-history standard, the proper-cause requirement [was] therefore unconstitutional." *Id.* at 39.

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court further clarified its analysis in Second Amendment cases. That case involved a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which disarms individuals subject to certain domestic violence protective orders. The Supreme Court upheld the regulation, noting that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 681. More specifically, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* at 692. The Supreme Court noted further that even when a challenged regulation does not match historical precursors with precision, it "still may be analogous enough to pass constitutional muster," if the law "comport[s] with the principles underlying the Second Amendment[.]" *Id.*

During this discussion, the Supreme Court reiterated that "many . . . prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 682 (quoting *Heller*, 554 U.S. at 626, 627 & n.26).

2. The Effect of *Bruen* and *Rahimi* on the D.C. Circuit's Earlier Ruling in *Medina*

In *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019), the D.C. Circuit unequivocally held that, pursuant to the Supreme Court's guidance in *Heller*, "a felony conviction removes one from the scope of the Second Amendment." In that case, defendant Medina – who had been convicted of making a false statement to a lending institution, in violation of 18 U.S.C. § 1014 (a nonviolent felony) – claimed that § 922(g)(1) violated the Second Amendment as applied to him, "because he pose[d] no heightened risk of gun violence." *Medina*, 913 F.3d at 154. The D.C. Circuit rejected that contention noting that "felons are not among the law-abiding, responsible citizens entitled to the protections of the Second Amendment." *Id.* "In *Heller*, and again in *McDonald v. City of Chicago*, the Court explained that the recognition of an individual right to bear firearms does not cast doubt on longstanding prohibitions on the possession of firearms by felons. The practice of barring convicted felons from possessing firearms is a presumptively lawful regulatory measure." *Medina*, 913 F.3d at 155 (cleaned up).

In *Medina*, the D.C. Circuit opined that:

> On balance, the historical evidence and the Supreme Court's discussion of felon disarmament laws leads us to reject the argument that non-dangerous felons have a right to bear arms. As a practical matter, this makes good sense. Using an amorphous "dangerousness" standard to delineate the scope of the Second Amendment would require the government to make case-by-case predictive judgments before barring the possession of weapons by convicted criminals, illegal aliens, or perhaps even children. We do not think the public, in ratifying the Second Amendment, would have understood the right to be so expansive and limitless. At its core, the Amendment protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home. Whether a certain crime removes one from the category of "law-abiding and responsible," in some cases, may be a

> close question. For example, the crime leading to the firearm prohibition in *Schrader*–a misdemeanor arising from a fistfight—may be open to debate. Those who commit felonies, however, cannot profit from our recognition of such borderline cases. For these reasons, we hold that those convicted of felonies are not among those entitled to possess arms.

*Medina,* 913 F.3d at 159-160 (cleaned up).

Furthermore, the D.C. Circuit explained that "[b]ecause [Medina's] claim fails at the first step of the [then-prevailing two-step] analysis, we need not reach the second step." *Id.* at 161. As such, *Medina* is not predicated upon the second-step interest balancing that *Bruen* rejected, and it remains binding on this Court and controls the outcome of Defendant's claims that § 922(g)(1) is invalid. A more recent D.C. Circuit case addressed an appellant's proffer that Section 922(g)(1) was facially invalid and as applied to him "because his prior convictions d[id] not establish that he is currently a danger to others and his instant offense [felon in possession] did not involve violence with a firearm." *United States v. Johnson*, 158 F.4th 200, 202-203 (D.C. Cir. 2025). In *Johnson*, the D.C. Circuit opined that:

> In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), we upheld the facial validity of § 922(g)(1). We do not find it "obvious" that *Bruen* disturbed *Medina.* So on plain error review, we reject [Appellant's] facial challenge, and we also apply *Medina's* guidance for as-applied challenges, which requires Appellant to show that his predicate felonies were minor or regulatory. "To the extent that it may be possible for a felon to show that his crime was so minor or regulatory that he did not forfeit his right to bear arms by committing it, [Appellant] has not done so." *Medina*, 913 F.3d at 160. The violent nature of Appellant's previous convictions makes this impossible.

*Johnson*, 158 F.4th at 203; *see also United States v. Darkwah*, Crim. Action No. 25-194 (LLA), 2026 WL 179662 (D.D.C. Jan. 21, 2026) (discussing a *Bruen* challenge to section 922(g)(1), made by a defendant convicted of being a felon in possession, in the context of a motion to dismiss a count of the Indictment).

In *Darkwah*, the Honorable Loren Alikhan noted that the "*Medina* Court solely examined

tradition and history to establish that a felony conviction removes one from the scope of the Second Amendment" and "the *Bruen* Court's refinement of the historical method applied in *Medina* does not clearly dictate a departure from *Medina* such that this Court could conclude it had been overruled." *Darkwah*, 2026 WL 179662, at *4 (cleaned up). The *Darkwah* court noted further that *Rahimi* provided "further support to *Medina's* conclusion" when "[t]he Supreme Court affirmed that the Nation's tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others" which applies also to those previously convicted of a felony. *Darkwah*, *id.* at *4 (cleaned up). Having set out the caselaw precedent for Defendant's claims challenging Section 922(g)(1), the Court turns now to the timeliness of Defendant's *Bruen* claims.

3. Defendant's *Bruen* Claims are Untimely

The applicable limitations period for Defendant's *Bruen* claims ended one year after the Supreme Court decided *Bruen* on June 23, 2022, which would be in June of 2023.[8] The earliest date on which Defendant raised his claims would be May 15, 2024, which is the date he listed on his Omnibus Motion and well after the one-year limitations period. In his Omnibus Motion, Defendant attempts to link his *Bruen* claims to his *Rehaif* claim (where he argued the relation-back doctrine, unsuccessfully), but the two claims are distinct, *see* ECF No 39, at 2, 9. "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *see also United States*

[8] The Government acknowledges that "*Bruen* generally applies retroactively." Govt. Opp'n., ECF No. 44, at 26, n.14.

*v. Redrick*, No. 13-cr-155 (RJL), 2024 WL 1091789, at *5 (D.D.C. Mar. 13, 2024) ("Because *Bruen* is a new theory of relief and Redrick did not raise the claim until after the one-year statute of limitations [for his *Rehaif*-based 2255 motion] expired, Redrick is not entitled to amend his § 2255 motion to add a claim under *Bruen*.") Accordingly, Defendant's *Bruen* claims are time-barred and his motion to revive his Section 2255 motion may be summarily dismissed on that basis alone.

4. Defendant's *Bruen* Claims are Procedurally Defaulted and Defendant Fails to Show Cause and Prejudice

Furthermore, the Government asserts, and this Court agrees, that Defendant is prohibited from raising his *Bruen* claims in a Section 2255 motion because he did not raise them on direct appeal. As noted herein previously, this procedural bar applies to claims that attempt to challenge the validity of a guilty plea on collateral review. *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.") The Government asserts that, following the *Bruen* decision, multiple district courts have applied this rule to find a defendant prohibited from raising a *Bruen* claim on collateral review if defendant failed to raise it on direct appeal. Govt. Opp'n, ECF No. 44, at 27, n.16 (string citing cases). The Court finds that Defendant's *Bruen* claims are procedurally barred because they were not raised on appeal and Defendant makes no showing of cause to excuse his failure to raise it or a showing of any prejudice. Accordingly, Defendant's *Bruen* claims are procedurally defaulted, which is a second ground for denial of his motion to reinstate his Section 2255 motion based on those claims.

5. Defendant's *Bruen* Claims are Without Merit

Defendant "relies" on *Bruen* (and *Rahimi*) to challenge the constitutionality of Section

922(g)(1) and as-applied to him.[9] Regarding Defendant's constitutional challenge, the Government indicates that "*Bruen*-based challenges to the federal felon-in-possession statute have been repeatedly rejected by other federal courts, including in this district." Govt. Opp'n, ECF No. 44, at 28 (string citing cases from numerous judges in this District). Furthermore, D.C. Circuit precedent establishes that 18 U.S.C. § 922(g)(1) is constitutional as to all felons, regardless of dangerousness. *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019); *see also Darkwah*, 2026 WL 179662, at *3 (But as courts in this district have consistently held since *Bruen*, [defendant's] arguments are foreclosed by D.C. Circuit precedent. In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019, a pre-*Bruen* case, examination of the Nation's historical tradition of firearms regulation led the Court to reject the argument that previously convicted felons have the right to bear arms.") Accordingly, the Court finds that Defendant's constitutionality argument fails as it is contrary to D.C. Circuit precedent.

Furthermore, as to Defendant's as-applied challenge, the D.C. Circuit explained in *Johnson* [which post-dates *Bruen*]:

> In *Medina*, we held open the possibility that a "felon [could] show that his crime was so minor or regulatory that he did not forfeit his right to bear arms by committing it." 913 F.3d at 160. But we also said that Medina's convictions for felony and misdemeanor fraud indicated a "disregard for the basic laws and norms of our society" that is "precisely what differentiates a criminal from someone who is 'law-abiding.'" *Id.* If nonviolent fraud convictions are not sufficiently "minor or regulatory" to succeed as an as-applied challenge under *Medina,* Appellant's convictions for violent crimes do not come close.

*Johnson*, 158 F.4th at 209-210; *see also Darkwah*, 2026 WL 179662, at *4-5 (finding that

[9] In his Reply, Defendant proffers his understanding that *Rahini* "extended the *Bruen* framework" and he mentions a "*Rahimi*-based challenge." Reply, ECF No. 26, at 1-4.

defendant's as-applied challenge failed where defendant (who had a prior conviction for possession of marijuana with intent to distribute) had not "show[n] facts about his conviction that distinguishe[d] him from other convicted felons encompassed by the [Section] 922(g)(1) prohibition" that the prior conviction could be characterized as "so minor or regulatory" to remove him from the class of felons prohibited from possessing firearms).

In the instant case, Defendant's prior conviction for Possession of a Firearm during a Violent Dangerous Offense (noted in the PSR) puts him outside of the realm of a conviction "so minor or regulatory," that his as-applied challenge fails. Accordingly, the Court finds that Defendant's *Bruen* challenges to Section 922(g)(1) are contradicted by applicable case law, including law from this Circuit, and this is a third ground for denial of Defendant's motion to reinstate his Section 2255 motion based on his *Bruen* claims.

Having determined that Defendant's challenges pursuant to *Rehaif* and *Bruen* cannot succeed, the Court turns now to Defendant's claims pursuant to Amendments 819 and 821.

C. Defendant's Claims for a Sentencing Reduction Fail

Defendant proffers challenges to his sentence based on Amendments 819 and 821 of the Sentencing Guidelines and he requests a sentence reduction pursuant to these provisions.

1. Amendment 819

Amendment 819 of the Sentencing Guidelines – which addresses new firearm-related offenses – is inapplicable to Defendant as it is not retroactive; *see* U.S.S.G. § 1B1.10(d) (listing the guideline amendments that apply retroactively and omitting Amendment 819 from this list). Furthermore, even if it Amendment 819 was retroactive, Amendment 819 is not relevant to Defendant's Guidelines calculations, as "[a]ll but one of the changes effected by Amendment 819

create or *increase* penalties for firearm-related conduct [a]nd the one change that provides for a downward adjustment applies only to offenders held accountable for straw-purchasing firearms and who, among other things, have no more than [one] criminal history point." Govt. Opp'n, ECF No. 44, at 60 (emphasis in original). In this case, Defendant was not held accountable for straw-purchasing firearms, and he has more than one criminal history point.[10] Accordingly, Amendment 819 is inapplicable to Defendant, and Defendant's claim for relief based on Amendment 819 is denied.

2. Amendment 821

Defendant asks this Court also to reduce his sentence pursuant to the criminal history "status points" provisions of Part A of Amendment 821 of the Sentencing Guidelines. Def.'s Omnibus Mot. , ECF No. 39, at 4-5. Part A of Amendment 821 limits the impact of "status points," which are the additional criminal history points given to defendants for committing the offense while under another criminal justice sentence such as probation or imprisonment. The Sentencing Commission gave retroactive effect to Part A. As relevant to Defendant, the amended provision states: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d) and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e). Previously, a defendant who committed an offense while under a criminal justice sentence received 2 "status points" regardless of his criminal history points, while that defendant now receives 1 "status point" when assigned 7 or more criminal history points (or no "status

[10] Nor did Defendant traffic firearms or possess a "ghost" gun, which are the other firearms regulations affected by Amendment 819.

points" if defendant has 6 or fewer criminal history points).

In this case, the status-points provision of Amendment 821 does not lower Defendant's Guideline range. Removing the 2 status points he received at sentencing leaves him with 7 criminal history points. *See* Sent. Tr., ECF No. 28, at 2-3 (discussing points). Defendant's seven criminal history points produce the same criminal history category of IV and the same Guideline range of 51-63 months of imprisonment. Accordingly, because Defendant's Guideline range is not lowered, he is entitled to no relief. *See Dillon v. United States*, 560 U.S. 817, 821 (2010) (addressing the process for application of a retroactive guideline amendment and emphasizing that "[a]ny reduction must be consistent with applicable policy statements issued by the Sentencing Commission"). In *Dillon*, the Supreme Court discussed the two-step approach that district courts are required to follow when confronted with a motion for reduction of sentence pursuant to 18 U.S.C. §3582(c)(2), as in this case:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A) . . .

*Dillon*. 560 U.S. at 827 (discussing step two). In this case, Defendant's motion fails at the first step because Amendment 821 has not lowered his Guideline range. Section 1B1.10(a)(2) of the

Sentencing Guidelines provides that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a retroactive amendment] does not have the effect of lowering the defendant's applicable guideline range." That situation exists in this case, and accordingly, Defendant's request for a sentencing reduction pursuant to Amendment 821 is denied.

D. Appointing Counsel for Defendant Is Not in the Interests of Justice

In addition to requesting that the Court vacate or reduce his sentence, Defendant requests the appointment of counsel to assist in litigating his claims in his [proffered revived] § 2255 Motion, *see* Def.'s Section 2255 Mot., ECF No. 36, at 2, and in seeking a sentence reduction under Amendment 819, *see* Def.'s Mot. for Appt. of Counsel, ECF No. 38, at 1.

The right to counsel does not attach generally to post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.") The Criminal Justice Act provides however for federal courts to appoint counsel for indigent defendants in certain post-conviction proceedings when it is in the "interests of justice" to do so. 18 U.S.C. § 3006A(a)(2)(B). Although this statute refers to post-conviction motions under 28 U.S.C. §§ 2241, 2254, and 2255, courts have applied this "interests of justice" standard to other post-conviction proceedings, *see, e.g., United States v. Morales*, No. 06-cr-248 (JDB), 2021 WL 4622461, at *1 n.1 (D.D.C. Oct. 7, 2021) (noting that courts possess discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if required by the interests of justice).

In determining whether appointing counsel is in the interests of justice, a court must consider "(1) the petitioner's likelihood of success on the merits, (2) the ability of the petitioner

to articulate his claims *pro se* in light of the complexity of the legal issue involved, and (3) the factual complexity of the case and whether the petitioner has the ability to investigate undeveloped facts." *United States v. Washington*, 782 F. Supp. 2d 1, 3 (D.D.C. 2011) (citing *United States v. Waite*, 382 F. Supp. 2d 1, 2 (D.D.C. 2005)). Courts often consider the merit of the claims when considering a request for counsel. *See, e.g., Morales*, 2021 WL 4622461, at *1 n.1 ("The court finds that the issues presented here are indeed straightforward and that Mr. Morales' motion [for a reduced sentence] lacks merit, such that the interests of justice do not require the appointment of counsel for Mr. Morales."); *United States v. Piles*, No. 19-cr-292 (JDB), 2021 WL 1198019, at *1 n.2 (D.D.C. Mar. 30, 2021) ("Because the issues here are straightforward, the Court finds that the interests of justice do not require appointment of counsel to assist Piles with his § 3582(c) motion and hence denies his request.")

In this case, the Court has determined that Amendment 819 is inapplicable to Defendant; Amendment 821 does not affect Defendant's Guidelines range. Furthermore, the Court has determined that Defendant's proffered claims forming the basis of his proposed revived Section 2255 motion are without merit and contrary to Circuit precedent. Moreover, the Court notes that Defendant was represented by counsel, post-*Rehaif*, when Defendant's original Section 2255 motion was filed and subsequently voluntarily dismissed. Accordingly, it is not in the interests of justice to appoint counsel to assist Defendant in pursuing a revived Section 2255 motion or his request for a sentence reduction based on Amendments 819 and 821.

IV. CONCLUSION

For the reasons explained in detail herein, this Court finds that Defendant's motions to revive/reinstate his § 2255 motion are denied because the *Rehaif* and *Bruen* claims underlying his

Section 2255 motion are without merit, and such [revived] motion is untimely and procedurally defaulted. Defendant's requests for a sentence reduction pursuant to Amendments 819 and 821 are denied because Amendment 819 is inapplicable to him and application of Amendment 821 does not lower his sentencing Guidelines range. Accordingly, Defendant's conviction and sentence remain unchanged. A separate Order accompanies this Memorandum Opinion.

Colleen Kollar-Kotelly

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE